UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 07-239-GWU

THERESIA GIBBONS,                                                                         PLAINTIFF,

VS.                     **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                         DEFENDANT.

## INTRODUCTION

Theresia Gibbons brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income (SSI). The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

>  Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

07-239  Gibbons

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist.

Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Gibbons suffered from impairments related to hypertension and back pain.  (Tr. 17).  Despite the plaintiff's impairments, the ALJ determined that she retained the residual functional capacity to perform a restricted range of medium level work.  (Tr. 19).  Since the claimant would still be able to perform her past relevant work as a substitute teacher and sewing machine operator, she could not be considered totally disabled.  (Tr. 21-22).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence.  The ALJ erred in evaluating the evidence of record relating to Gibbons's mental condition.  However, the current record does not mandate an immediate award of SSI.  Therefore, the court must grant the plaintiff's summary judgment motion and deny that of the defendant.

Although the ALJ ultimately concluded that Gibbons did not suffer from a "severe" mental impairment, the ALJ did ask Vocational Expert James Miller to consider a number of mental limitations.  These initially included a "limited but

7

satisfactory" ability to relate to co-workers, deal with the public, use judgment, interact with supervisors, deal with work stresses, maintain attention and concentration, handle complex instructions, behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability along with a number of physical restrictions. (Tr. 227). In response, Miller testified that the plaintiff's past work could still be performed. (Id.). The ALJ then changed the restrictions concerning dealing with work stresses, maintaining attention and concentration, and demonstrating reliability to "ability is seriously limited but not precluded." (Tr. 227-228). With these more serious mental restrictions, no work would be available including the claimant's past relevant jobs. (Tr. 228). Thus, the existence of mental limitations could be very significant in determining whether Gibbons could still perform work activities.

Psychologist Robert Spangler examined Gibbons and diagnosed a generalized anxiety disorder, a major depressive disorder, and low average intelligence. (Tr. 173). Spangler opined that the plaintiff would have a "poor/none" ability to handle complex job instructions and demonstrate reliability. (Tr. 178). "Poor/none" was defined as "no useful ability to function in this area." (Tr. 177). The claimant's ability was rated as "fair" in such areas as relating to co-workers, dealing with the public, dealing with work stresses, behaving in an emotionally stable manner and relating predictably in social situations. (Tr. 177-178). "Fair was defined as "ability to function in this area is seriously limited but not precluded." (Tr.

8

177). Gibbons's ability was rated as "fair to good" in such areas as interacting with supervisors, functioning independently, maintaining attention and concentration, and maintaining personal appearance. (Tr. 177-178). "Good" was defined as "the ability to function in this area is more than satisfactory." (Tr. 177). These are very significant restrictions which strongly suggest the existence of a "severe" mental impairment which would preclude the past relevant work as well as possibly all employment. Thus, Spangler's report does not support the administrative decision.

Psychologist Phil Pack also examined Gibbons. Pack diagnosed a major depressive disorder. (Tr. 191). The examiner opined that the plaintiff would have a "fair to poor" ability to deal with work stresses, to maintain attention and concentration and to demonstrate reliability. (Tr. 194-195). "Fair" was defined as "ability to function in this area is limited but satisfactory" while "poor" was defined as "ability to function in this area is limited but satisfactory." (Tr. 194). The claimant's ability was rated as "fair" in such areas as relating to co-workers, dealing with the public, using judgment, interacting with supervisors, handling complex job instructions, behaving in an emotionally stable manner, and relating predictably in social situations. (Tr. 194-195). These mental restrictions also strongly suggest the existence of a "severe" mental impairment which could preclude the past work. Therefore, this opinion also does not support the administrative decision.

Gibbons was treated for her mental problems at the Cumberland River Comprehensive Care Center. The plaintiff was diagnosed as suffering from an

adjustment disorder with depressed mood. (Tr. 114). The Cumberland River staff did not address the issue of specific work limitations which would afflict the claimant. Thus, this report does not offset the specific mental restrictions identified by the examiners.

The ALJ rejected the opinions of the examining sources because of an unexplainable decline in test scores between Spangler's April, 2006 examination and Pack's June, 2006 evaluation. (Tr. 19). The ALJ was also concerned about discrepancies in the Global Assessment of Functioning (GAF) score of 65[1] noted when the plaintiff was last seen at Cumberland River in August of 2005 and the very severe mental problems indicated by the consultative examiners in April and June of 2006. (Id.). However, the court notes that Spangler specifically indicated in April of 2006, that his test scores were a "valid and reliable estimate of Mrs. Gibbons's abilities and achievement levels at this time." (Tr. 173). While the decline in test scores obtained during Pack's July, 2006 examination might provide cause to question Pack's findings, such concerns do not appear to relate to Spangler's April, 2006 results. Even Pack, who had access to Spangler's earlier testing results (Tr. 186), did not note this as a factor which would make his evaluation results unreliable. With regard to the earlier Cumberland River GAF score, the court notes

---

[1]A GAF of 65 indicates the existence of "mild" psychological symptoms according to the American Psychiatric Association's <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th Ed.--Text Revision), p. 34.

07-239 Gibbons

that specific functional limitations were not addressed.  Furthermore, the plaintiff's mental status could easily have deteriorated in the time period between August, 2005 and April, 2006.  While the claimant did not seek treatment during this period, the Sixth Circuit Court of Appeals has stated that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989).  If the ALJ found the examiner's opinions to be questionable, she should have sought the advice of a medical expert rather than substitute her own lay opinion for those of the mental health professionals.  Therefore, a remand of the action for further consideration is required.

    The undersigned concludes that the administrative decision must be reversed and the action remanded to the Commissioner for further consideration.  Therefore, the court must grant the plaintiff's summary judgment motion in so far as such relief is achieved and deny that of the defendant.  A separate judgment and order will be entered simultaneously consistent with this opinion.

    This the 9th day of April, 2008.

**Signed By:**

<u>G. Wix Unthank</u> 

**United States Senior Judge**